IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALAN PETROSKY                  :           CIVIL ACTION
                                :
     v.                     :
                                :           No. 14-3970
ALLSTATE FIRE AND CASUALTY    :
INSURANCE COMPANY          :

<u>MEMORANDUM</u>

Legrome D. Davis, District Judge                             October 30, 2015

      Plaintiff Alan Petrosky was injured in a motor vehicle accident on March 19, 2012, while

on duty as a police officer employed by the City of Philadelphia.   Petrosky commenced suit in

state court against his automobile insurance carrier, Defendant Allstate Fire and Casualty

Insurance Company ("Allstate"), to recover underinsured motorist benefits (UIM).   Allstate

removed the lawsuit to this District Court based on diversity jurisdiction, 28 U.S.C. § 1332.

      Allstate moves for summary judgment, maintaining that under a "regular use" exclusion

contained in the automobile insurance policy that it sold to Petrosky, it is not liable for UIM

benefits.   Defendant's Motion ("Def. Mot.") & Ex. F, "the Policy" (Doc. Nos. 15, 15-6).   This is so,

the motion asserts, because Petrosky was injured while "occupying" a police patrol car that was

made available for his regular use.   Petrosky opposes the motion, challenging the proffered

interpretation of the exclusion.   He maintains that the exclusion does not apply to his case.

Plaintiff's Response ("Pl. Resp.") (Doc. No. 16 at 2-13) and Brief ("Pl. Br.") (Doc. No. 16 at 14-31).

Petrosky requests that summary judgment be granted in his favor, awarding him UIM benefits.

      The Policy's regular use exclusion precludes UIM benefits for bodily injury "while in, on,

getting into or out of" a motor vehicle that is available for the insured's regular use, but is not

owned by the insured and is not insured for UIM coverage under the Policy.   Policy at 20 (Doc.

No. 15-6 at 37).   The patrol car was owned by the City and was not insured under the Policy. The parties also agree that the regular use exclusion does not contain the term, "occupying," and the Policy does not define the phrase, "while in, on, getting into or out of."   They disagree about the meaning of that phrase and its application to the facts presented here.

Allstate's motion is based principally on the liberal rule of Utica Mutual Insurance Co. v. Contrisciane, 473 A.2d 1005 (Pa. 1984) for determining under an insurance coverage provision whether an insured is "occupying" a vehicle.   Under that rule, the motion asserts, Petrosky occupied a regularly used patrol car when he was struck and injured by an underinsured motor vehicle, and the regular use exclusion eliminates UIM benefits for him.   Defendant's Brief ("Def. Br.") at 2 (Doc. No. 15 at 19, 18-40).   On the other hand, Petrosky's position is that under Pennsylvania's well-settled rules governing insurance contracts, the regular use exclusion must be interpreted strictly and narrowly according to the plain and ordinary meaning of its terms.   So read, he maintains that the exclusion may not be judicially rewritten to add the unstated term, "occupying," and he was not in fact injured "while in, on, getting into or out of" the patrol car. Pls. Resp. at 2.   In his view, whether he "occupied" the patrol car within the meaning of Utica Mutual is irrelevant and immaterial given the policy provisions and circumstances at issue here.

The primary question presented is whether the insuring agreement for the Policy's UIM Coverage compensates Petrosky for his bodily injuries arising from an underinsured car striking him while he walked along the side of the roadway, or instead, whether the UIM Coverage's exclusion of damages for bodily injuries sustained "while in, on, getting into or out of" a regularly used, non-owned motor vehicle─here, the patrol car─precludes his recovery of UIM benefits for bodily injuries arising from that accident.   As follows, Petrosky's position prevails.

2

I.     FACTUAL AND PROCEDURAL HISTORY

On March 19, 2012, Alan Petrosky was working as a police officer for the City of

Philadelphia.   At about 6:45 p.m. that day, he investigated a minor collision between two cars on

Cottman Avenue in Philadelphia, Pennsylvania.   Defendant's Statement of Undisputed Facts

("Def. Stmt.") ¶¶ 1, 2 (Doc. No. 15-5 at 3, 3-6).   One car was driven by Evelyn Rosa and the

other by Anthony Rosenberg.   Id. ¶ 2.   Rosa had called the police requesting that an officer be

dispatched.   Deposition Testimony of Alan Petrosky, dated Jan. 21, 2015 ("Petrosky Dep."),

78-79, Pl. Resp., Ex. A (Doc. No. 16 at 33-74) and Def. Mot., Ex. E (Doc. No. 15-5).

Upon arrival, Officer Petrosky parked his marked patrol car along the curb behind

Rosenberg's car, which was parked behind Rosa's car.   Def. Stmt. ¶ 7.   All of the vehicles were

parked safely off the roadway, and Petrosky turned off the patrol car's engine and lights.   He got

out of his patrol car and approached Rosa and Rosenberg, who were standing together in an area

between the bumpers of their cars, arguing.   Id. ¶ 9.   Petrosky separated them and asked each to

retrieve their license, registration, and insurance information.   Id. ¶ 10.   After they complied, he

returned to his patrol car, processed their information using the police computer system, ran a

background check, and prepared an accident report.   Id. ¶ 11.   After completing those tasks, he

walked to the driver's window of Rosenberg's car, gave him a citation for not producing proof of

insurance, and informed him that he was free to leave.   Id. ¶ 12; Petrosky Dep., 92.   Petrosky

then walked to the driver's window of Rosa's car and returned her paperwork.   Id.

As Petrosky moved away from Rosa's car intending to return to his patrol car, Rosa asked

for his name and badge number.   Petrosky Dep., 93-95, 98-99.   He said, "okay," and then

"walked sideways facing her car," "as close as possible," "trying to get around to the trunk area"

in order to use it as support for his writing.   Id., 93-95.   As he so moved near the trunk of Rosa's car, Rosenberg began to drive away.   Rosenberg's car struck Petrosky.   Id., 95.

Rosenberg stopped, and Petrosky pulled him out of his car and placed him under arrest in the back of the patrol car.   Petrosky Dep., 95.   Petrosky called his supervisors and a number of officers responded to the scene.   Id., 95-100.   Shortly after their arrival, Petrosky's "shock, anger, adrenaline" subsided, and he began to feel pain in his leg and side.   Id., 102.   One of the officers took him to Jeannes Hospital.   Id., 102, 105.   Petrosky presently reports chronic pain from his bodily injuries as well as anxiety and depression.   Id., 133-148.

Petrosky submitted a claim for compensation from Rosenberg's automobile liability insurance carrier, GEICO.   Def. Stmt. ¶ 19.   GEICO paid Petrosky the $15,000 policy limits for bodily injury.   Id.   Petrosky also submitted an insurance claim under Allstate's Policy, which provides $500,000 in stacked policy limits for UIM coverage.   Id. ¶ 21; Def. Br. at 4-5.   Allstate denied Petrosky's insurance claim based on the Policy's regular use exclusion.   Pl. Resp. at 18.

Petrosky sued Allstate in the Philadelphia Court of Common Pleas to compel Allstate to pay UIM benefits.   Notice of Removal, Ex. A, Complaint (Doc. No. 1).   On June 26, 2014, Allstate removed the lawsuit to this District Court.   Id.   On March 9, 2015, Allstate filed the present motion for summary judgment.   At the Court's request, the parties submitted supplementary briefs as to whether Petrosky was "occupying" the patrol car at the time he was struck by Rosenberg's car.   Order, dated May 6, 2015, (Doc. No. 18); the parties' respective Supplemental Briefs (Doc. Nos. 19, 20).

II.   <u>DISCUSSION</u>

A.   Standards for Review and Rules for Decision

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(2).   A fact is material if it "might affect the outcome of the suit under governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).   Importantly, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   <u>Id.</u>   Mere allegations or denials of a party's pleadings, or "a scintilla of evidence" in support of a party's position, are insufficient to defeat a properly supported motion for summary judgment.   <u>Id.</u> at 248, 252.

Here, no genuine dispute as to any material fact is presented.   Instead, the parties present questions of law concerning the meaning and application of the Policy's regular use exclusion. They agree that Pennsylvania law governs interpretation of the Policy and the extent of coverage that it provides.   Accordingly, Pennsylvania law will be applied here.

Under Pennsylvania law, the interpretation of a contract of insurance is a matter of law for the courts to decide.   <u>Babcock & Wilcox Co. v. Am. Nuclear Insurers</u>, No. 2 WAP 2014, --- A.3d ----, 2015 WL 4430352, at *10 (Pa. July 21, 2015); <u>Donegal Mut. Ins. Co. v. Baumhammers</u>, 938 A.2d 286, 290 (Pa. 2007).   <u>Accord</u> <u>Allstate Property & Cas. Ins. Co. v. Squires</u>, 667 F.3d 388, 391 (3d Cir. 2012).   "Whether a claim for insurance benefits is covered by a policy is a matter of law which may be decided on a summary judgment motion."   <u>Nordi v. Keystone Health Plan W. Inc.</u>, 989 A.2d 376, 379-80 (Pa. Super. Ct. 2010) (citing <u>Tenos v. State Farm Ins. Co.</u>, 716 A.2d 626, 628 (Pa. Super. Ct. 1998)).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Pennsylvania "courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claims falls within the coverage provided by the insurance policy." Erie Ins. Grp. v. Catania, 95 A.3d 320, 322 (Pa. Super. Ct.), appeal denied, 104 A.3d 4 (Pa. 2014) (citing McEwing v. Lititz Mut. Ins. Co., 77 A.3d 639, 646 (Pa. Super. Ct. 2013) (citing Miller v. Boston Ins. Co., 218 A.2d 275, 278 (Pa. 1966)).   On the other hand, when an insurer denies coverage based on an exclusion, "the insurer has asserted an affirmative defense and bears the burden of proving the exclusion."   Id. (citing McEwing, 77 A.3d at 646 (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

Whether the parties have met their respective burdens of proof must be determined under Pennsylvania's well-settled principles for interpreting insurance contracts.   Fundamentally,

> we must ascertain the intent of the parties as manifested by the language of the written agreement.   When the policy language is clear and unambiguous, we will give effect to the language of the contract.

Squires, 667 F.3d at 391 (quoting Paylor v. Hartford Ins. Co., 640 A.2d 1234, 1235 (Pa. 1994) (interpreting UIM policy) (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)).   However, if the meaning of that policy language is doubtful or ambiguous, it should be construed against the insurer and resolved in the insured's favor. Babcock, 2015 WL 4430352, at *10; Standard Venetian Blind, 469 A.2d at 566.

Where, as is the case here, "the state's highest court has not addressed the precise question presented, we must predict how the state's highest court would resolve the issue."   Wayne

6

Moving & Storage of N.J., Inc. v. Sch. Dist. of Philadelphia, 625 F.3d 148, 154 (3d Cir. 2010)

(alteration omitted) (citing Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir.

1996) (citing Erie R. R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).   In doing so,

> we must look to decisions of state intermediate appellate courts, of
> federal courts interpreting that state's law, and of other state
> supreme courts that have addressed the issue, as well as to
> analogous decisions, considered dicta, scholarly works, and any
> other reliable data tending convincingly to show how the highest
> court in the state would decide the issue at hand.

Squires, 667 F.3d at 391 (quoting Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 164 (3d Cir.

2011) (internal quotation marks and citations omitted)).   "'Although not dispositive, decisions of

state intermediate appellate courts should be accorded significant weight in the absence of an

indication that the highest state court would rule otherwise.'"   Id. (quoting Orson, 79 F.3d at

1373 n.15).   Whereas few of Pennsylvania's intermediate appellate courts have addressed the

precise policy language at issue here, other intermediate appellate court decisions based on

comparable circumstances provide significant guidance in answering the question presented.

B.    Insurance Policy and MVFRL Statutory Provisions

Under Pennsylvania law, the "polestar of our inquiry" is the language of the Policy.

Madison Constr., 735 A.2d at 106.   In pertinent part, the Policy's UIM Coverage and its

exclusion for regularly used, non-owned vehicles provides that Allstate:

> will pay damages to an insured person for **bodily injury** which an insured person
> is legally entitled to recover from the owner or operator of an underinsured auto.
> **Bodily injury** must be caused by accident and arise out of the ownership,
> maintenance or use of an underinsured auto.
>                 *              *          *
> **Exclusions−What is not covered**
> **Allstate** will not pay any damages an insured person is legally entitled to recover
> because of:

7

*          *          *

6.      **bodily injury** to **you** . . . while in, on, getting into or out of or when struck by a non-owned **motor vehicle** not insured for Underinsured Motorists Coverage under this policy if that non-owned **motor vehicle** is available for the regular use of **you** . . . .

Policy at 19, 20 (Doc. No. 15-6 at 36, 37) (bold terms are defined elsewhere in the Policy).

It is not disputed that Petrosky is an insured under the Policy's UIM Coverage.   In part, the Policy defines an "insured person" as:   "You."   In addition, "you" or "your" is defined to mean:   "the policyholder named on the Policy Declarations."   Policy, Insured Persons; General Provisions, Definitions; and UIM Coverage Definitions.   Policy (Doc. No. 15-6 at 19, 36-37). "Alan Petrosky" is so listed on the Policy Declarations as the sole "Named Insured."   Policy (Doc. No. 15-6 at 12).   It is also not disputed that Petrosky claims insured bodily injuries, as defined by the UIM Coverage Definitions.   Policy (Doc. No. 15-6 at 36 ("means bodily injury, sickness, disease or death")).

The Policy's language tracks the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), which requires that insurers offer UIM benefits in motor vehicle liability insurance policies.[1]   The MVFRL provides for "underinsured motorist coverage" as follows:

Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.

75 Pa.C.S.A. §1731(c).   In addition, the Policy defines an "underinsured auto," as follows:

---

[1]   "Mandatory offering.−No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage).   Purchase of uninsured motorist and underinsured motorist coverages is optional."   75 Pa.C.S.A. §1731(a).

8

> A motor vehicle which has bodily injury liability protection in effect at the time of the accident, but its limit for bodily injury liability is less than the damages the insured person is legally entitled to recover.

(Doc. No. 15-6 at 36).   The MVFRL defines an underinsured motor vehicle as a "motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages."   75 Pa.C.S.A. §1702.

"UIM insurance provides insureds, who select coverage, with a source of recovery where a tortfeasor lacks sufficient resources to compensate them fully."   Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co., 788 A.2d 955, 960 (Pa. 2001).   Our Court of Appeals instructs that "the MVFRL is to be liberally construed in order to afford the greatest possible coverage to injured claimants" and "[i]n close or doubtful insurance cases, a court should resolve the meaning of insurance policy provisions or legislative intent in favor of coverage for the insured."   Squires, 667 F.3d at 396 (quoting Houston v. SEPTA, 19 A.3d 6, 14 (Pa. Commw. Ct.) (citing 1 Pa.C.S.A. § 1928(c) (stating with exceptions inapplicable here that statutes "shall be liberally construed to effect their objects and promote justice"), appeal denied, 34 A.3d 834 (Pa. 2011)).[2]

Pennsylvania's courts have long recognized exclusions for regularly used, non-owned vehicles as valid contractual restraints on the portability of UIM coverage, which are consonant with public policies underlying the MVFRL.   Burstein v. Prudential Property & Cas. Ins. Co.,

---

[2]   Our Court of Appeals also instructs that "in Pennsylvania '[i]nsurance contracts are presumed to have been made with reference to substantive law, including applicable statutes in force, and such laws enter into and form a part of the contractual obligation as if actually incorporated into the contract.'" Allstate Property & Cas. Ins. Co. v. Squires, 667 F.3d 388, 388 n.4 (3d Cir. 2012) (citing Clairton City Sch. Dist. v. Mary, 541 A.2d 849, 851 (Pa. Commw. Ct. 1988) (citing First Nat'l Bank of Pa. v. Flanagan, 528 A.2d 134 (Pa. 1987)).   In this case, both the language of the policy and the MVFRL control the coverage analysis.

809 A.2d 204, 207-10 (Pa. 2002).[3]   The purpose of this type of exclusion is "to permit the

insurer to capture an additional premium in exchange for the specific coverage."   Id. at 214 &

n.9 (Saylor, J., dissenting) (citing Crum & Forster Personal Ins. Co. v. Travelers Corp., 631 A.2d

671, 672-73 (Pa. Superior Ct. 1993)).   The exclusion functions so as to preserve UIM

> coverage to the insured or members of her family while engaged in casual or
> infrequent use of a vehicle other than the one described in the policy, but not to
> cover the insured or members of her family with respect to another vehicle which
> he or she used or had the opportunity to use frequently.   The policy language thus
> prevents the situation in which members of one household may have two vehicles
> which they can use interchangeably while insuring only one of them. . . . As Judge
> Ditter said in Johnson v. Braunsberg, 51 Pa. D. & C.2d 659 (1970):
>
> > The clause in question represents an attempt on the part of
> > the insurance company to strike a balance between the desire of the
> > insured to be covered, even though not using his own car, and its
> > own right to receive payment of premiums based upon the risk
> > presented by the number of automobiles operated.   It is generally
> > held that such a clause covers the insured during infrequent or
> > casual use of a nonowned automobile, but excludes coverage as to
> > another's automobile which the policyholder frequently uses or has
> > the opportunity to use . . . .

Crum & Forster, 631 A.2d at 672-73 (citations omitted).   "Most significantly," if this type of

exclusion were not enforceable, "insureds would be empowered to regularly drive an infinite

number of non-owned vehicles, and receive gratis UIM coverage on all of those vehicles if they

merely purchase UIM coverage on one owned vehicle."   Burstein, 809 A.2d at 208.

The Supreme Court of Pennsylvania recognized that an insured's regular use of a

non-owned motor vehicle presents increased risks arising from the number of automobiles

operated and their condition.   Burstein, 809 A.2d at 208-09.   Some of those increased risks are:

---

[3]   The concept of the "portability" of UIM coverage is that the insurance attaches to the person of
the insured, instead of the vehicle.

> Several dynamics affect an insurer's risks pertaining to an insured's regular use of a non-owned car:  the type of car; the safety features of the car; the cost of repairing and maintaining the car; the miles regularly logged on the car; etc.  To illustrate, if an insured's employer-provided car offered only nominal safety features, the risks of injury would be far greater than if the insured were driving a vehicle that boasted state-of-the-art safety features.  In effect, the heightened risks increase the probability that damages will exceed a tortfeasor's liability policy and, thereby, trigger an insured's UIM coverage; once UIM coverage is invoked, the risks then increase the amount payable under the coverage.

Id. at 209.   Insurers have a right to receive payment of premiums based upon the risks presented, and the regular use exclusion prevents insurers from being compelled to "subsidize unknown and uncompensated risks by increasing insurance rates comprehensively."   Id. at 208 (the exclusion "functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure").

      C.       The Policy's Regular Use Exclusion Does Not Apply to Petrosky's Accident

Under Pennsylvania law, the "goal in construing and applying the language of an insurance contract is to effectuate the intent of the parties as manifested by the language of the specific policy."   Pa. Nat'l Mut. Cas. Ins. Co. v. St. John, 106 A.3d 1, 14 (Pa. 2014).   The "language of the policy must be construed in its plain and ordinary sense, and the policy must be read in its entirety."   Id.   Accord Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011); Meyer, 648 F.3d at 163.   "The policy must be construed as a whole, not in discrete units."  J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004) (internal quotation marks and citations omitted); 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 170 (Pa. 2005) ("we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties"); accord Gov't Emps. Ins. Co. v. Ayers, 955 A.2d 1025, 1028-29 (Pa. Super. Ct. 2008), aff'd, 18 A.3d 1093 (Pa. 2011).

With these principles in mind, the analysis begins with the Policy's insuring agreement for UIM Coverage.   That agreement is a "coverage" provision, which affirmatively grants UIM benefits.   "'[C]overage clauses are interpreted broadly so as to afford the greatest possible protection to the insured.   Exceptions to an insurer's general liability are accordingly to be interpreted narrowly against the insurer.'"   Westport Ins. Corp. v. Bayer, 284 F.3d 489, 498 n.7 (3d Cir. 2002) (quoting Eichelberger v. Warner, 434 A.2d 747, 750 (Pa. Super. Ct. 1981) (citations omitted)).   Accord Bombar v. W. Am. Ins. Co., 932 A.2d 78, 87 (Pa. Super. Ct. 2007); Boyle v. State Farm Mut. Auto. Ins. Co., 456 A.2d 156, 162 (Pa. Super. Ct. 1983).

The Policy's insuring agreement for UIM Coverage agrees to pay all damages for bodily injuries arising from the "ownership, maintenance or use" of an underinsured vehicle.   Allstate agreed to pay Petrosky all damages for bodily injuries which he is "legally entitled to recover from the owner or operator of an underinsured auto."   Policy at 19 (Doc. No. 15-6 at 36). However, insured damages for bodily injury "must be caused by accident," and the owner or operator's liability must ""arise out of the ownership, maintenance or use of an underinsured auto."   Id.   The insuring agreement tracks the MVFRL's requirement that insurers "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles."   75 Pa.C.S.A. § 1731(c).   Petrosky has the burden to establish that his claim falls within the Policy's insuring agreement for UIM Coverage.

Under Pennsylvania law, "the central inquiry in assessing whether an incident 'arose' out of the maintenance, ownership, or 'use' of a motor vehicle concerns causation."   Squires, 667 F.3d at 391-92, 395.   Whether interpreting insurance policies or analyzing issues under the

12

MVFRL, Pennsylvania's Supreme Court and intermediate appellate courts have long emphasized causation in fact in resolving this question.   Id.

The term, "use," is not defined any place in the Policy; however, it is a word of common usage.   "The court construes '[w]ords of common usage . . . according to their natural, plain, and ordinary sense.'"   Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 293 (3d Cir. 2012) (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)).   "To this end, the court 'may consult the dictionary definition of a word to determine its ordinary usage.'"   Id. (quoting Kvaerner, 908 A.2d at 897); Madison Constr., 735 A.2d at 108.   "Use" and "using," however, have a multitude of common usages and numerous dictionary definitions.   "Recognizing this problem," the Supreme Court of Pennsylvania instructed:

> Of course if the term "use" is construed to embrace all of its possible meanings and ramifications, practically every activity of mankind would amount to a "use" of something.   However the term must be considered with regard to the setting in which it is employed.

Erie Ins. Exch. v. E.L. ex rel. Lowry, 941 A.2d 1270, 1274 (Pa. Super. Ct.), appeal denied, 956 A.2d 435 (Pa. 2008) (quoting Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1367 (Pa. 1987)).   Here, the pertinent context is the Policy's UIM Coverage, both its insuring agreement and its limitations and exceptions, as applied to the facts of this case.

In Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co., the Supreme Court of Pennsylvania was asked to declare the parties' respective rights under an automobile liability insurance policy that contained an insuring agreement closely comparable to the Policy's grant of benefits under the UIM Coverage.   Goodville construed the phrase, "arising out of," to mean "causally connected with" and "not proximately caused by," explaining:

13

> When the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured.   Had the insurer desired to limit its liability to accidents with such a close causal connection to the ownership, maintenance or use of the trailer as to be encompassed within the scope of proximate causation, it could have and should have so stated in its policy.   Construed strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by.   'But for' causation, i.e., a cause and result relationship is enough to satisfy this provision of the policy.

170 A.2d 571, 573 (Pa. 1961); accord Eichelberger, 434 A.2d at 749 & n.1 (collecting cases).

"This formulation of 'arising out of' is now well-settled in Pennsylvania, and has been applied in various insurance law settings, both when interpreting policies and assessing issues arising by operation of statutes."   Squires, 667 F.3d at 391-92.   Since its formulation in 1961, it has been so applied under both the MVFRL and its predecessor, the Pennsylvania No-fault Motor Vehicle Insurance Act, §§ 1009.101−1009.701 (repealed effective Oct. 1, 1984).

Importantly, Goodville's construal of "arising out of" as meaning "but for" causation was formulated for purposes of evaluating the trial court's dismissal of the case.   Similarly, Squires ruled that an insured's well-pled factual allegations of "but for' causation were sufficient to survive its insurer's motion for judgment on the pleadings.   However, our Court of Appeals has been careful to note that Goodville's "but for" formulation of "arising out of" is not sufficient under Pennsylvania law for a party to prevail on its ultimate burden of proof, stating:   "'every incidental factor that arguably contributes to an accident is not a "but for" cause in the legal sense.'"   Squires, 667 F.3d at 392 n.7, 394 (quoting U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 94-95 (3d Cir. 1996) (collecting Pennsylvania cases, and citing Berry v. Sugar Notch Borough, 43 A. 240, 240 (Pa. 1899)).   "Pennsylvania law makes clear that 'maintenance or use' of a motor vehicle requires causation."   U.S. Underwriters, 80 F.3d at 95.

14

"The court must determine the 'instrumentality used to cause the injury.'"   Id. (quoting Spisak v. Nationwide Mut. Ins. Co., 478 A.2d 891, 893 (Pa. Super. Ct. 1984)).   "Causation . . . requires more than 'mere happenstance.'" Id.   (quoting Roach v. Port Auth. of Allegheny Cnty., 550 A.2d 1346, 1349 (Pa. Super. Ct. 1988) (rejecting claim that bus passenger injured in fight between two other passengers arose out of use of motor vehicle)).

It is not disputed that under the Policy's insuring agreement for UIM Coverage, Petrosky is "legally entitled to recover" damages from Rosenberg.   GEICO determined that Rosenberg was at fault and paid its policy's liability limit to Petrosky.   Neither side alleges that Rosenberg acted intentionally, or that Petrosky injuries were caused other than accidentally.   The insurance for Rosenberg's vehicle proved inadequate to compensate Petrosky for his damages and injuries. It is also not disputed that under the Policy and the MVFRL, Rosenberg's liability arises out of his operation of an underinsured car.   Furthermore, there is no genuine dispute about how Petrosky was injured.   He was directly and immediately injured when Rosenberg's car struck him.   The record does not suggest that any other vehicle physically caused his injuries.

Accordingly, under the Policy's insuring agreement for UIM Coverage, Allstate is liable to Petrosky for all damages for bodily injuries proximately caused by Rosenberg's car striking Petrosky, unless Allstate's liability is otherwise limited or excluded by other terms contained in the Policy's UIM Coverage.   Neither side argues otherwise or genuinely disputes this.[4]

---

[4]   This record establishes that Rosenberg was the sole actor at fault for Petrosky's accident. Neither side argues that the City of Philadelphia was legally liable or otherwise at fault.   Also, Rosenberg's car is the only underinsured motor vehicle at issue.   The record is devoid of evidence as to whether the City was self-insured or had purchased an insurance policy that provided UIM coverage for the patrol car that Petrosky drove.   In this case, Petrosky does not contend that he is legally entitled to recover damages from the City.   He also does not sue to recover UIM benefits based on his operation or other use of the patrol car, either under this Policy or any other insurance reflected in the record.

Allstate's denial of coverage is grounded solely on the regular use exclusion, which exempts from the Policy's insuring agreement for UIM Coverage certain risks of bodily injury. In part, the exclusion states that "Allstate will not pay damages an insured person is legally entitled to recover because of . . . bodily injury to you . . . ."   Policy at 20 (Doc. No. 15-6 37). The exclusion's use of "bodily injury" incorporates the insuring agreement's requirements that "[b]odily injury must be caused by accident and arise out of the . . . use of an underinsured auto." Id. at 19, 20 (Doc. No. 15-6 at 36, 37).   It is clear that both the insuring agreement and the exclusion require that bodily injury be caused by accident and arise out of the use of an underinsured auto.   However, it is not as clear whether the exclusion also requires a causal nexus between an insured person's bodily injury and a regularly used, non-owned motor vehicle. This uncertainty requires an analysis of the terms contained in the regular use exclusion.

The exclusion states that it applies to "bodily injury to you . . . while in, on, getting into or out of or when struck by a non-owned motor vehicle . . . if that non-owned motor vehicle is available for the regular use of you."   Policy at 20 (Doc. No. 15-6 at 37).   The exclusion's terms, "while in, on, getting into or out of or when struck by," are words of common usage, which therefore must be construed according to their natural, plain, and ordinary sense.   Sweeney, 689 F.3d at 293; Kvaerner, 908 A.2d at 897.

In common usage, "while" is defined as "'the time during which an action takes place or a conditions exists.'"   Sweeney, 689 F.3d at 293 (quoting Webster's Third New International Dictionary, Unabridged (Merriam̨Webster 2002)).   This term unambiguously imposes a "temporal restriction" on the exclusion's operation.   Id.   The exclusion is triggered during the time that an insured person acts so as to be "in, on, getting into or out of or when struck by" a

16

motor vehicle.   Id.   The specified actions or circumstances require the use of a motor vehicle.

See, e.g., Lucas-Raso v. Am. Mfrs. Ins. Co., 657 A.2d 1, 5 (Pa. Super. Ct.) ("entering a vehicle is

essential to its use") (citing Frain v. Keystone Ins. Co., 640 A.2d 1352, 1357 (Pa. Super. Ct.

1994)), appeal denied, 668 A.2d 1119 (Pa. 1995).   Importantly, the exclusion's terms also

unambiguously restrict its application to an insured person's actions and circumstances, as

specified, in connection with a non-owned motor vehicle "that is available for the insured's

regular use."   Policy at 20 (Doc. No. 15-6 at 37).   By its plain terms, the exclusion requires a

causal connection between the bodily injuries sustained and the specified uses of a regularly

used, non-owned motor vehicle.

Also, in common usage, "'available' means 'suitable or ready for use,' and 'readily

obtainable, accessible,' and 'regular' means 'usual, normal or customary.'"   Auto. Ins. Co. of

Hartford, Conn. v. Curran, 994 F. Supp. 324, (E.D. Pa. 1998) (quoting Fed. Kemper Ins. Co. v.

Ward, 679 F. Supp. 489, 492 (E.D. Pa.), aff'd, 860 F.2d 1074 (3d Cir. 1988)).   Here, it is not

disputed that the patrol car was available for Petrosky's regular use, and he regularly used it or

another patrol car from the City's fleet of vehicles.

Allstate bases its denial of UIM benefits on Petrosky's customary use of the City's patrol

cars during the course and scope of his employment.   Allstate does not contend that Petrosky's

operation or other use of the patrol car physically contributed in any way to his accident.   In

addition, Allstate does not contend that Petrosky was "in," "on," or "getting out of" the patrol car

when he was injured.   Instead, Allstate focuses on whether Petrosky was injured while still in

the process of "getting into" the patrol car.   In essence, Allstate contends that there "is a clear

causal relationship" between Petrosky's injuries and his use of the patrol car," and "it was always

[Petrosky's] intention to return to his vehicle," and "he was on his way back to his police car when Rosa stopped him to ask for his name and badge number."   Def. Mot. ¶¶ 42, 44; <u>see also</u> Def. Br. at 14-15, 22.   Allstate cites Petrosky's testimony that "had the accident not occurred, he would have returned to his police cruiser and resumed his patrol."   Def. Br. at 15-16, 22 (summarizing Petrosky Dep., 98-99).   This position is not well founded, as follows.

Strictly and narrowly construing the plain language of the regular use exclusion, as required under Pennsylvania law, it is effective only if a strong causal nexus exists between an insured person's bodily injury and a non-owned motor vehicle that is available for that person's regular use.   Moreover, the exclusion is triggered only if the specified uses of a regularly used, non-owned motor vehicle cause bodily injury.   The requisite causal nexus is one of proximate causation.   "But for" causation is not enough to trigger the exclusion.   This has long been the rule in Pennsylvania for the construal of comparable exclusions:

> As previously indicated, our Supreme Court in <u>Goodville</u>, relying on the rule that insurance policies are to be strictly construed against the insurer, ruled that for an inclusionary clause, the words "arising out of" the use of an automobile meant casually connected with such use.   In keeping with the rule of construction used in <u>Goodville</u>, we hold that for purposes of an exclusionary clause, when the words "arising out of" the use of an automobile are read strictly against the insurer, then it must be concluded that this clause acts to exclude only those injuries which are proximately caused by the automobile.   This interpretation is consistent with the general rule that insurance policies are read to effect the policy's dominant purpose of indemnity or payment to the insured.

<u>Eichelberger</u>, 434 A.2d at 752.   <u>See also</u> <u>Squires</u>, 667 F.3d at 393-94 (discussing and collecting Pennsylvania cases); <u>U.S. Underwriters</u>, 80 F.3d at 94-95 (3d Cir. 1996) (same).   This ruling is also consistent with recent decisions by Pennsylvania's intermediate appellate courts, and in particular:   <u>Swarner v. Mutual Benefit Group</u>, 72 A.3d 641 (Pa. Super. Ct. 2013), <u>appeal denied</u>,

85 A.3d 484 (Pa. 2014), and Allstate Fire and Casualty Insurance Co. v. Hymes, 29 A.3d 1169

(Pa. Super. Ct. 2011) (affirming, No. GD 10-000201, 2010 WL 3001747 (Pa. Com. Pl. July 22,

2010)), appeal denied, 46 A.3d 715 (Pa. 2012).

In Hymes, Jacob Hymes was driving his motorcycle when he collided with a car driven

by Robert Meyer.   Myer was at fault, but was underinsured.   Hymes, who had not elected UIM

coverage under his primary policy, claimed UIM benefits under his parents' policy with Allstate.

A "household exclusion" contained in Allstate's policy excluded UIM benefits for "'anyone while

in, on, getting into or out of or when struck by a motor vehicle owned or leased by you or a

resident relative which is not insured for [UIM] Coverage under this policy.'"   29 A.3d at

1170-71, 1172 (quoting policy).   Jacob contended that the exclusion did not apply because he

was injured after he collided with Meyer's car and was thrown from the motorcycle into the car's

windshield and onto the ground some 20 feet away from the point of impact.   Hymes applied the

plain meaning of the exclusionary terms and affirmed the trial court's ruling that the exclusion

barred UIM benefits because there was no "plausible argument that the injuries complained of

here are not the direct result of Jacob's operation of his motorcycle while 'on' it."   Id. at 1172-73.

The coverage question in Hymes was decided on Allstate's motion for judgment on the

pleadings.   Hymes approved and adopted the trial court's rationale, finding that a strong causal

connection between Jacob's use of the motorcycle and his injuries justified enforcement of the

exclusion.   29 A.3d at 1172-73.   As the trial court had aptly explained:

> The accident clearly involves a continuous chain of events from the impact until the
> vehicles and body came to rest.   Defendants' [the Hymes family's] interpretation
> would require the court to entertain expert testimony on the impossible task of
> separating which of [Jacob's] injuries occurred while still on the motorcycle at

impact . . . and which injuries occurred after [he] left contact with the motorcycle. . . .
Segmenting the accident under defendants' analysis would create an absurd result.

2010 WL 3001747 (W. Terrence O'Brien, J.).

Similarly, <u>Swarner</u> ruled on cross-motions for summary judgment that "but for" causation was not sufficient to justify application of a "household exclusion, often referred to as the family-car exclusion."   72 A.3d at 644, 650-51.   The Swarners were married, residing together, and named insureds under a Mutual Benefit automobile insurance policy.   Mr. Swarner owned a motorcycle that was not insured under that policy.   The motorcycle, while being driven by Mr. Swarner with Ms. Swarner a passenger, collided with a truck driven by Bender.   Ms. Swarner became airborne and landed in the travel lane of an adjacent roadway.   She was then run over by another truck driven by Howie.   Mutual Benefit denied coverage based on the exclusion for injuries sustained while occupying an owned motor vehicle that was not insured under its policy.

The exclusion in <u>Swarner</u> barred UIM benefits for "bodily injury" sustained by the insured "'while "occupying" or when struck by any motor vehicle you own which is not insured for this coverage under the policy.'"   72 A.3d at 646 (quoting policy).   The policy defined "occupying" as "'In; . . Upon; or . . . Getting in, on, out or off.'"   <u>Id.</u>   <u>Swarner</u> applied the plain language of the policy, construing the exclusion narrowly as required under Pennsylvania law.   <u>Id.</u> at 649 (citing <u>Baumhammers</u>, 938 A.2d at 290; <u>Kropa v. Gateway Ford</u>, 974 A.2d 502, 508 (Pa. Super. Ct. 2009), <u>appeal denied</u>, 990 A.2d 730 (Pa. 2010); <u>Eichelberger</u>, 434 A.2d at 750).   Guided by these principles and the holding of <u>Hymes</u>, <u>Swarner</u> held that the exclusion's defined terms−"in," or "upon," or "getting in, on, or off"−did not encompass the situation "where Ms. Swarner was lying in the roadway and subsequently struck by an underinsured motorist:

20

> Ms. Swarner had ceased to occupy the motorcycle, *i.e.*, she was no longer "on" or in the process of "Getting in, on, out or off" within the meaning of the household exclusion when she was run over by Mr. Howie's truck.

Id. at 651, 650-51.   Swarner required a strong, proximate causal connection between Ms. Swarner's injuries and the defined, excluded uses of her husband's motorcycle.   Because the requisite causal connection did not exist on the summary judgment record presented, Swarner refused to enforce the exclusion.

Here, guided as well by Pennsylvania's rules for interpreting insurance contract exclusions, and the holdings of Hymes and Swarner, the plain language of the regular use exclusion does not encompass Petrosky's injuries.   On this record, it was not an act of entering or "getting into" the patrol car that caused Petrosky's injuries.

Specifically, the timing and circumstances of that accident are the focus for analysis. At the time Petrosky was struck by Rosenberg's car, he had safely parked and exited from the patrol car.   The patrol car's engines and lights were turned off.   He was no longer physically in, on, or getting out of the patrol car.   He was in the general vicinity of the patrol car, but he was not touching it.   He had walked more than a car's length away from the patrol car, beyond Rosenberg's car to the driver's window of Rosa's car.   He was walking alongside and toward the rear of Rosa's car, intending to use the car's trunk for support.   He had completely disengaged from any immediate, tangible use of the patrol car or its equipment.   In addition, he had completed the investigation of Rosa's and Rosenberg's cars, and he had no further official use for the patrol car, other than to drive away from the scene and resume his duties as a police officer. He had arrived on the scene in the patrol car, and he intended to drive away in it.   The force of Rosenberg's car striking him intervened.   Rosenberg's car was the sole instrument for Petrosky's

injuries.   None of his injury is attributable to his use of the patrol car, or its presence, position, or movement.   The record does not establish that the patrol car contributed in any significant manner to Petrosky's injuries.

Allstate contends that Petrosky was injured while still in the process of getting into the patrol car, because he intended to return to it and was en route to enter it.   In Allstate's view, the impact of Rosenberg's car disrupted Petrosky from completing that process, but did not break the continuity of his use of the patrol car.   However, the regular use exclusion may not be rewritten to encompass "intended use," and a motorist's intent alone is not an act of entering into a motor vehicle.   Even under a liberally construed coverage provision, similar conduct has been held insufficient to show a causal connection between the injuries sustained and use of a motor vehicle.   For example, Lucas-Raso ruled that a motorist was not in the act of entering her car while she was walking around the back of the car to reach the driver's side with the intent of entering it, but she fell into a snow-covered pothole and was injured.   657 A.2d at 4-5. Although she was physically outside the car and did not contact it during her fall, she alleged that under Utica Mutual she was an occupant of the car and therefore, was using it at the time of her injury.   Id. at 4.   The court considered this contention, noting that "it is not disputed that 'maintenance and use' is presumed if occupancy can be shown," but held that she was not an occupant.   Id.   Importantly for this case, the court explained:   "Even if we agreed that . . . [the injured motorist] was an occupant, she must still prove the existence of a causal connection between the injuries sustained and the maintenance and use of a motor vehicle."   Id.

Allstate also asserts that the requisite causal relationship exists because Petrosky drove the patrol car to drive to the scene of the investigation.   Obviously, but for the sun rising and

Petrosky reporting for work that day, he would not have driven the patrol car and he would not have been injured by Rosenberg's car.   "But for" causation is not enough, however.   Even under a liberally construed automobile insurance coverage provision for medical benefits, "the mere fact that a motor vehicle is the place where injuries are sustained is insufficient to establish a causal connection between the use of a vehicle and the injuries so as to require the payment of first party benefits."   Alvarino v. Allstate Ins. Co., 537 A.2d 18, 21 (Pa. Super. Ct. 1988) (passenger was bitten by a dog chained within a vehicle); see also Roach, supra.

Allstate proposes that the regular use exclusion be interpreted to encompass all of Petrosky's actions on the scene from the time he arrived until he departed for Jeannes Hospital, contending that a continuous chain of investigative events transpired during that period.   In Allstate's view, Petrosky was at all times engaged in transactions essential to his investigation and continued use of the patrol car.   It was part of his duties as a police officer to get out of his vehicle and interact with motorists using the roadways.   It was only because of those duties that he was away from his patrol car, walking along the side of the road.   Allstate concludes that at the time Petrosky was struck by Rosenberg's car, he was still using the patrol car in the investigation, and therefore, the regular use exclusion bars UIM benefits.   This proposal misconceives the dominant purpose and scope of the regular use exclusion.

Allstate's position impermissibly expands the regular use exclusion to preclude UIM benefits for an insured person's bodily injuries sustained while acting as a police officer.   By its plain terms, it applies only to bodily injuries sustained while "in, on, getting into or getting out of or when struck by" a non-owned motor vehicle that is available for the insured's regular use. Burstein, supra, recognized that regular use of a non-owned motor vehicle presents increased

23

risks arising from the number of automobiles operated and their condition.   The exclusion is

designed to prevent insurers from being forced to underwrite those unknown risks without

receiving payment of premiums.   Petrosky's duties as a police officer present certain risks, but

those risks do not flow from his use of a fleet vehicle as a motor vehicle.   If those risks were to

be conflated, as proposed by Allstate, the exclusion would follow a police officer during the

course and scope of his or her work, wherever their patrol car goes, without regard to whether the

patrol car caused an insured person's bodily injuries.   A policyholder would not reasonably

expect such an outcome after paying a premium for UIM Coverage, which Petrosky did pay.

     Furthermore, the regular use exclusion does not contain the term, "occupying."   "'If the

terms of a policy are clear, this Court may not rewrite it or give it a construction in conflict with

the accepted and plain meaning of the language used.'"   <u>Hymes</u>, 29 A.3d at 1172-73 (quoting

<u>Wall Rose Mut. Ins. Co. v. Manross</u>, 939 A.2d 958, 962 (Pa. Super. Ct. 2007), <u>appeal denied</u>,

946 A.2d 688 (Pa. 2008)).   If Allstate intended the exclusion to be triggered when an insured

sustained bodily injury while "occupying" a regularly used, non-owned motor vehicle, then

Allstate should have included the word "occupying" in the exclusion, or defined the exclusionary

terms, "in, on, getting into or out of" a motor vehicle, to mean "occupying" a vehicle.

     Allstate clarified the meaning of "occupying" by definition in another part of the Policy

and could have used that definition to clarify the meaning of the regular use exclusion, but did

not do so.   The Policy defines "occupying" to mean "in or upon, entering into or alighting from,"

but this definition appears in a separate, standalone coverage part, under a section setting forth

definitions for that coverage part.   Policy at 9-10, Part 2, First Party Benefits Coverage (Doc.

No. 15-6 at 26-27).   That definition is not contained in the UIM Coverage.   Under Pennsylvania

24

law, "a court should not impute to an insurance company the benefit of qualifying language which it chose not to adopt."   Nationwide Mut. Ins. Co. v. Shoemaker, 965 F. Supp. 700, 703 (E.D. Pa. 1997) (Pollak, J.) (internal quotation marks and citations omitted), aff'd, 149 F.3d 1165 (3d Cir. 1998).   See also Lowry, 941 A.2d at 1273-74 (ruling under a comparable regular use exclusion, that the words "using" and "occupying" are not interchangeable").   The Policy may not be rewritten now to make a different or better contract for Allstate.

Allstate proposes that Utica Mutual Insurance Co. v. Contrisciane, supra, should control interpretation of the regular use exclusion's phrase, "in, on, getting into or out of."   Utica Mutual set forth criteria for determining whether a person is "occupying" a vehicle under an automobile insuring agreement for uninsured motorist coverage, holding "that when a person is engaged in the lawful use of an insured vehicle, he will be considered to be 'occupying' that vehicle within the meaning of the policy, provided he can meet [four] criteria.[5]   473 A.2d at 1009.   The policy defined "occupying" to mean "in or upon or entering into or alighting from" the vehicle.   Id. at 1008.   Allstate contends that this record establishes each criterion:   there is but for causation between Petrosky's injuries and the patrol car; his location was closely proximate to the patrol car; he was vehicle-oriented because he intended and was en route to enter the patrol car and

---

[5]   Under Utica Mutual Insurance Co. v. Contrisciane, a person is "occupying" a vehicle if each of the following criteria are met:

    1.   there is a causal relation or connection between the injury and the use of the insured vehicle;

    2.   the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

    3.   the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

    4.   the person must also be engaged in a transaction essential to the use of the vehicle at the time.

473 A.2d 1005, 1009 (Pa. 1984).   See, e.g., Lynn v. Westport Ins. Corp., 258 F. App'x 438 (3d Cir. 2007) (applying Utica Mutual's criteria to facts closely analogous to those presented here).

continue his police work; and before his accident, he was using the patrol car for transactions essential to his work as a police officer. It is concluded that the exclusionary phrase, "in, on, getting into or out of," means "occupying" as interpreted under <u>Utica Mutual</u> and decisions applying its rule. Allstate is mistaken.

<u>Utica Mutual</u> adopted a "liberal interpretation" of the term "occupying" and its definition, which were contained in an insuring agreement for uninsured motorist coverage. 473 A.2d at 1009. That approach was in accord with the well-settled general rule used by Pennsylvania courts "that an insurance policy is to be construed most strongly against the insurer and liberally in favor of the insured to effect the policy's dominant purpose of indemnity or payment to the insured where the terms of the policy are ambiguous or uncertain and the intention of the parties is unclear." <u>Eichelberger</u>, 434 A.2d at 749, 750 (discussing <u>Goodville</u>, 170 A.2d at 573); <u>Squires</u>, 667 F.3d at 391-92 (same). It would be error to apply <u>Utica Mutual's</u> liberal rule, which is designed to afford an insured the greatest possible protection under a coverage clause, to expansively construe the regular use exclusion. Pennsylvania's courts apply different rules for the construction of exclusionary clauses. Exclusions are interpreted strictly and narrowly against the insurer, in favor of coverage for the insured. <u>Bayer</u>, 284 F.3d at 498 n.7 (citing <u>Eichelberger</u>, 434 A.2d at 750). It would be irrational and unfair to apply <u>Utica Mutual's</u> liberal rule in order to defeat protection for the insured by imposing a greater preclusion of insurance benefits than permitted by the plain terms of the regular use exclusion. Even though an insuring clause is virtually identical to an exclusionary clause, their different rules for construction make the meaning and application of their respective terms different as well. <u>Cf</u> <u>Eichelberger</u>, 434 A.2d at 751-52 (under different canons of construction, comparable terms (<u>i.e.</u>,

26

"arising out of the . . . use" of a vehicle), which were contained in an exclusion of a homeowner's policy and in the insuring agreement of an automobile policy, "are not mutually exclusive and recovery can be had under both policies").

Importantly, Swarner held "that the Utica Mutual factors are not controlling in construing the defined term 'occupying' in the context of a policy exclusion under the MVFRL."   72 A.3d at 650.   Hymes also applied the plain language of a comparable exclusion from UIM coverage, and did so without any discussion or mention of Utica Mutual.

III.   CONCLUSION

It is predicted that the Supreme Court of Pennsylvania, when faced with a set of facts similar to those presented here, would hold that Petrosky's injuries did not arise while he was "getting into" a regularly used, non-owned motor vehicle.   The regular use exclusion from the Policy's UIM Coverage, by its plain language, does not apply to the facts of this case.   Petrosky, claiming entitlement to insurance benefits for his injuries, has met his burden on summary judgment to establish that his claim falls within the Policy's UIM Coverage.   Allstate, denying insurance benefits for Petrosky's injuries based on the regular use exclusion from the Policy's UIM Coverage, has the burden on summary judgment of establishing that affirmative defense, but has not done so.   Summary judgment will be entered in favor of Petrosky and against Allstate, awarding Petrosky UIM benefits under the Policy.

An Order accompanies this Memorandum.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

27